UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JETAUN H.,[1]

                       Plaintiff              DECISION AND ORDER

-vs-

                                       1:20-CV-0208 CJS

COMMISSIONER OF SOCIAL
SECURITY,

                      Defendant.
_____

INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner" or "Defendant") which denied the application of Plaintiff for Social Security Disability Insurance benefits and Supplemental Security Income benefits.  Now before the Court is Plaintiff's motion (ECF No.15) for judgment on the pleadings and Defendant's cross-motion (ECF No. 19) for the same relief.   For the reasons discussed below, Plaintiff's application is denied and Defendant's application is granted.

STANDARDS OF LAW

The Commissioner decides applications for SSDI and SSI benefits using a five-step sequential evaluation:

> A five-step sequential analysis is used to evaluate disability claims. *See* 20 C.F.R. §§ 404.1520, 416.920.   First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not,

---

[1] The Court's Standing Order issued on November 18, 2020, indicates in pertinent part that, "[e]ffective immediately, in opinions filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

1

>  the Commissioner next considers whether the claimant has a severe impairment which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in the regulations [or medically equals a listed impairment].  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.[2]  Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform. The claimant bears the burden of proof as to the first four steps, while the Commissioner bears the burden at step five.

*Colvin v. Berryhill*, 734 F. App'x 756, 758 (2d Cir. 2018) (citations and internal quotation marks omitted)

An unsuccessful claimant may bring an action in federal district court to challenge the Commissioner's denial of the disability claim.  In such an action, "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C.A. § 405(g) (West).  Further, Section 405(g) states, in relevant part, that "[t]he findings of the Commissioner of Social security as to any fact, if supported by substantial evidence, shall be conclusive."

The issue to be determined by the court is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *see*

---

[2] Residual functional capacity "is what the claimant can still do despite the limitations imposed by his impairment." *Bushey v. Berryhill*, 739 F. App'x 668, 670–71 (2d Cir. 2018) (citations omitted); *see also*, 1996 WL 374184, Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996).

2

*also, Barnaby v. Berryhill*, 773 F. App'x 642, 643 (2d Cir. 2019) ("[We] will uphold the decision if it is supported by substantial evidence and the correct legal standards were applied.") (citing *Zabala v. Astrue*, 595 F.3d 402, 408 (2d Cir. 2010) and *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).").

"First, the [c]ourt reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standard." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999); *see also, Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) ("[W]here an error of law has been made that might have affected the disposition of the case, this court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the ALJ. Failure to apply the correct legal standards is grounds for reversal.") (citation omitted).

If the Commissioner applied the correct legal standards, the court next "examines the record to determine if the Commissioner's conclusions are supported by substantial evidence." *Tejada v. Apfel*, 167 F.3d at 773. Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (citation omitted).

> The substantial evidence standard is a very deferential standard of review— even more so than the 'clearly erroneous' standard, and the Commissioner's findings of fact must be upheld unless a reasonable factfinder would have to conclude otherwise." *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original). "An ALJ is not required to discuss every piece of evidence submitted, and the failure to cite specific evidence does not indicate that such evidence was not considered." *Id*.

*Banyai v. Berryhill*, 767 F. App'x 176, 177 (2d Cir. 2019), as amended (Apr. 30, 2019)

(internal quotation marks omitted).

In applying this standard, a court is not permitted to re-weigh the evidence. *See, Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."); *see also, Riordan v. Barnhart*, No. 06 CIV 4773 AKH, 2007 WL 1406649, at *4 (S.D.N.Y. May 8, 2007) ("The court does not engage in a *de novo* determination of whether or not the claimant is disabled, but instead determines whether correct legal standards were applied and whether substantial evidence supports the decision of the Commissioner.") (citations omitted).

## FACTUAL and PROCEDURAL BACKGROUND

The reader is presumed to be familiar with the facts and procedural history of this action. The Court will refer to the record only as necessary for purposes of this Decision and Order.

Plaintiff claims to have become disabled as of January 1, 2015, due to a combination of impairments including foot bunions, foot nerve entrapment, stomach ulcer, depression and post-traumatic stress disorder ("PTSD"). After her claim was denied initially, on November 14, 2018, a hearing was conducted before an administrative law judge ("ALJ"), at which Plaintiff, who was represented by an attorney, testified, along with a vocational expert ("VE"). At the hearing, the ALJ posed questions to the VE, including the following:

> ALJ: . . . I'm going to ask you to assume a hypothetical individual of the claimant's age, education and past work experience and this person's going to be limited to *light work*. And they could occasionally climb ramps and

> stairs, and ladders, ropes of scaffolds, they could occasionally balance, stoop and crouch, they should never work in vibration.   They would be able to perform simple, routine tasks and make simple work-related decisions. And they'd be able to occasionally interact with supervisors and coworkers, and they should have no interaction with the public.   Can that individual do claimant's past work?
>
> VE: No.   Her past work is over the exertion level of the hypothetical.
>
> ALJ: Would there be any [other] work for that person in the national economy?
>
> VE:   Yes.   [VE lists several jobs]
>
> ALJ: What if we take that individual and limit them to only *sedentary work* with the other same restrictions.   Would there be any work for that person in the national economy?
>
> VE:   Yes.   There would be. [VE lists several jobs]

Tr. 60–61 (emphasis added).

On December 21, 2018, the ALJ issued a decision finding that Plaintiff was not disabled at any relevant time. Tr. 12–22.   Applying the five-step sequential evaluation process, the ALJ found, in pertinent part, that Plaintiff had severe impairments consisting of "status post right foot bunionectomy and nerve entrapment, left foot bunion, major depressive disorder, [PTSD], alcohol use disorder, cannabis use disorder and crack cocaine use disorder," and that none of those impairments, either singly or in combination, met or medically equaled the severity of a listed impairment. Tr. 15. (Plaintiff does not challenge the ALJ's findings at the first three steps of the sequential evaluation)   The ALJ further found that Plaintiff had the following residual functional capacity (RFC):

5

> [C]laimant has the [RFC] to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she can lift ten pounds occasionally and less than ten pounds frequently; she can carry ten pounds occasionally and less than ten pounds frequently; she can stand for two hours, walk for two hours in an eight hour workday; she can climb ramps and stairs occasionally; she can climb ladders, ropes and scaffolds occasionally; she can occasionally balance, stoop and crouch; the claimant can never work in vibration; the claimant is able to perform simple, routine tasks and is able to perform simple work-related decisions; she can no more than occasionally interact with supervisors and coworkers; and, she should never interact with the public.

Tr. 17.  The ALJ also found that with this RFC, Plaintiff could not perform her past work but could perform other jobs identified by the VE, and was, therefore, not disabled.

In this action, Plaintiff contends that the Commissioner's decision denying benefits must be reversed for the following reasons: 1) "[T]he ALJ's hypothetical given to the [VE] at the hearing did not mirror the RFC the ALJ ultimately found," meaning that "the VE testimony did not actually provide support for the ALJ's finding that Plaintiff could work"; and 2) "The ALJ did not give any significant weight to any of the medical opinion evidence, instead basing the RFC on his own judgment."[3]

Defendant disputes Plaintiff's arguments and maintains that the ALJ's decision is free of reversible legal error and supported by substantial evidence.

The Court has carefully reviewed and considered the parties' submissions.

---

[3] Pl.'s Mem. of Law, ECF No. 15-1 at p. 1.  *See also, id*. at p. 10 ("The ALJ's RFC is inherently ambiguous and this ambiguity was never clarified.  Moreover, the hypothetical questions posed to the VE did not actually match the RFC the ALJ found. The step five finding is therefore unsupported by substantial evidence and this case must be remanded.  The ALJ also failed to support his RFC with any medical opinion evidence, rejecting all of the medical opinion evidence in the file, and the RFC was therefore unsupported because it was based solely on the ALJ's own lay judgment.").

DISCUSSION

<u>The ALJ's Alleged Failure to Pose a Hypothetical Question
to the VE that "Mirrored" the RFC Finding</u>

Plaintiff maintains that the ALJ's hypothetical question posed to the VE concerning sedentary work, quoted above, does not "match" the ALJ's RFC finding, since the ALJ asked the VE about sedentary work, but he did not clearly indicate in his RFC finding Plaintiff's ability to stand and walk. In this regard, Plaintiff contends that it is unclear from the RFC finding whether the ALJ found that Plaintiff could walk for two hours *and* stand for two hours, or whether he found that Plaintiff could walk *or* stand for only two hours total:

> The RFC states that Plaintiff could 'stand for two hours, walk for two hours in an eight hour workday.' It is not clear whether the ALJ meant this to mean four hours total of standing and walking, or two hours of *either* standing or walking. The former is not consistent with the Administration's definition of sedentary work, and would have required more specific vocational expert testimony to establish a valid step five finding. See SSR 83-10, 1983 WL 31251, *6 (S.S.A. 1983) ("Since being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing *or* walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total no more than about 2 hours of an 8-hour workday.") (emphasis added). However, the ALJ's hypothetical to the vocational expert did not mirror the RFC in this regard; rather, the ALJ posed a light work hypothetical with postural limitations, and then adjusted it to a sedentary RFC, but never specified the time that Plaintiff could stand or walk[.]

ECF No. 15-1 at pp. 11–12.

Defendant responds by contending that Plaintiff is "assert[ing] an ambiguity that does not exist," since it is clear from the RFC finding that the ALJ meant that Plaintiff

could stand for two hours and walk for two hours in an eight-hour workday. Defendant adds, though, that Plaintiff's argument is essentially pointless, since either of the two potential interpretations identified by Plaintiff are consistent with sedentary work:

> The ALJ found that Plaintiff could "stand for two hours, walk for two hours in an eight hour workday" indicating that she could stand for two hours and also walk for two hours in an eight hour day. . . . Regardless, if a claimant is capable of standing and/or walking for any amount of time, up to two out of eight hours, that ability is consistent with sedentary work. . . . In sum, Plaintiff asserts an ambiguity that does not exist. Regardless, whether Plaintiff could stand and/or walk for two hours combined or two hours each, either is consistent with sedentary work.

*See*, Def.'s Mem. of Law, ECF No. 19-1 at pp. 14–15.

The Court agrees with Defendant that the RFC finding is not ambiguous. Plaintiff contends that the ALJ's RFC finding is ambiguous, since it could mean either that Plaintiff can stand for two hours and walk for two hours or that he can stand and walk together for only two hours. However, the Court agrees with Defendant that there is no such ambiguity, since as the Court reads the ALJ's decision, he found that Plaintiff could stand for two hours and sit for two hours.

The Court also agrees with Defendant that either interpretation is consistent with sedentary work. The Commissioner's regulations indicate that sedentary work "involves sitting most of the time, but requires walking and standing "occasionally":

> Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

8

20 C.F.R. § 404.1567(a); *see also*, 20 C.F.R. § 416.967(a). In this context, the requirement of "occasional" walking and standing means that sedentary work requires either walking *or* standing, or a combination of both, for up to two hours. See, *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996) ("Sedentary work is defined as work that involves lifting up to ten pounds at a time and occasionally lifting and carrying light objects. 20 C.F.R. § 404.1567(a). Sedentary work also generally involves **up to two hours of standing or walking** and six hours of sitting in an eight-hour work day. Social Security Ruling 83–10 [("'Occasionally' means occurring from very little up to one-third of the time. Since being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday.")]; *see also* 20 C.F.R. § 404.1567(a).") (emphasis added); *see also, Michaels v. Colvin*, 621 F. App'x 35, 40 (2d Cir. 2015) ("'[P]eriods of **standing or walking** should generally total no more than about 2 hours of an 8–hour workday, and sitting should generally total approximately 6 hours of an 8–hour workday.' SSR 83–10, 1983 WL 31251, at *5.") (emphasis added); *Michaels v. Colvin*, 621 F. App'x 35, 40 (2d Cir. 2015) ("We conclude that this finding—that Michaels could perform sedentary work—is supported by substantial evidence. . . . [The records indicates that Michaels can sit for at least six hours, and] also supports a conclusion that Michaels would be able to tolerate *a combination of standing and walking for approximately two hours*, particularly if those activities were performed intermittently throughout the day.") (emphasis added).

Here, as already noted, the ALJ indicated that Plaintiff could stand for two hours and walk for two hours in an 8-hour workday, which exceeds the requirement of standing or walking required to perform sedentary work.  However, even assuming that the ALJ had stated that Plaintiff could stand and/or walk for two hours combined during an 8-hour workday, that also would have been sufficient to satisfy the standing/walking requirements of sedentary work.

Plaintiff nevertheless insists that if the ALJ meant that Plaintiff could perform "four hours total of standing and walking," the finding "was not consistent with the Administration's definition of sedentary work, and would have required more specific vocational expert testimony to establish a valid step five finding."  In this regard, Plaintiff is asserting that if a claimant can perform certain functions (*i.e.*, standing and walking) to an extent that *exceeds* the requirement for such activity at a particular exertional level, then the ALJ must obtain testimony from a VE on that point.  Again, however, the Court disagrees.  The requirement of occasional walking or standing is a minimum requirement for sedentary work, which a claimant may exceed.

Indeed, the Commissioner's rules recognize that a claimant's abilities may not always fit neatly within a particular exertional category. *See, e.g.*, Titles II & Xvi: Capability to Do Other Work-The Medical-Vocational Rules As A Framework for Evaluating Exertional Limitations Within A Range of Work or Between Ranges of Work, SSR 83-12 (S.S.A. 1983) ("In some instances, an individual can do a little more or less than the exertion specified for a particular range of work; e.g., the person is considered to be physically capable of meeting the exertional demands of light work except that he or she

10

can lift no more than 15 pounds at a time rather than 20 pounds, or he or she can fully meet the exertional demands of light work and can also perform part of the greater lifting requirement of medium work (such as up to 30 pounds at a time rather than 50 pounds at a time))."

In such a case, where the occupational base is eroded, the ALJ may need to take testimony from a VE:

> Where an individual's exertional RFC does not coincide with the definition of any one of the ranges of work as defined in sections 404.1567 and 416.967 of the regulations, the occupational base is affected and may or may not represent a significant number of jobs in terms of the rules directing a conclusion as to disability. The adjudicator will consider the extent of any erosion of the occupational base and access its significance. In some instances, the restriction will be so slight that it would clearly have little effect on the occupational base. In cases of considerably greater restriction(s), the occupational base will obviously be affected. In still other instances, the restrictions of the occupational base will be less obvious.   Where the extent of erosion of the occupational base is not clear, the adjudicator will need to consult a vocational resource.

*Id*.

Here, the ALJ complied with this rule since he took testimony from a VE after determining that Plaintiff was capable of performing less than a full range of sedentary work, for reasons unrelated to Plaintiff's ability to stand or walk. *See*, Tr. 21.  To the extent Plaintiff maintains that the ALJ was also required to question the VE specifically about the fact that Plaintiff was able to walk and stand *more than* is required by sedentary work,[4] the argument lacks merit, since Plaintiff's ability to walk and stand more than what

---

[4] Which is, in fact, what Plaintiff is arguing. *See*, Pl.'s Reply, ECF No. 22 at p. 2 ("It is simply not clear whether the ALJ's RFC is actually consistent with sedentary work, or is a modified sedentary work [sic]

is required of sedentary work did not *erode* the sedentary occupational base.

For the same reasons just discussed, Plaintiff's contention that remand is required because the ALJ's hypothetical question to the VE, quoted above, does not "mirror" the RFC finding similarly lacks merit.   In this regard, Plaintiff argues that the ALJ asked the VE to consider a hypothetical claimant capable of sedentary work, "but never specified the time that [the hypothetical claimant] could stand or walk"[.]   However, Plaintiff is incorrect, since by asking the VE to assume a hypothetical claimant would could perform sedentary work, the ALJ was incorporating the definition of sedentary work, which, as noted above, requires "occasional" walking or standing. The RFC indicates that Plaintiff is capable of at least, and, indeed, more than, occasional walking and standing. Consequently, there was no variation between the RFC and the hypothetical question posed to the VE.

<u>The ALJ's Alleged Erroneous Reliance on "His Own Judgment"
to Make His RFC Finding</u>

Plaintiff further maintains that the ALJ's RFC finding did not adopt the limitations contained in any particular medical opinion, and that such determination must therefore be based on the ALJ's own interpretation of the medical data, rather than on substantial evidence. *See, e.g.*, Pl. Memo of Law, ECF No. 15-1 at pp. 13 ("There are two physical opinions in this record: the consulting opinion from Dr. Balderman and the reviewing opinion from Dr. Feldman.   The ALJ gave both of these opinions little weight.") & 15 ("Left

---

including total time standing or walking *greater than the regulations provide*, and therefore requiring VE testimony to clarify.") (emphasis added).

without any support from the medical opinion evidence because the ALJ gave all of the opinion evidence little weight and because the ALJ conceded that there was in fact no opinion as to Plaintiff's permanent functional capacity, the physical RFC was therefore unsupported by substantial evidence.").

However, the premise of Plaintiff's argument – that the RFC finding must correspond to a particular medical opinion -- is incorrect:

> "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P, 1996 WL 374184 at *1 (S.S.A. July 2, 1996) (emphasis added). Therefore, the ALJ's RFC determination need not perfectly correspond with any one of the opinions of the medical sources cited in his or her decision, so long as he or she has "weigh[ed] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).

*Violet-Maria R. v. Comm'r of Soc. Sec.*, No. 1:19-CV-0999 (CJS), 2021 WL 1169186, at *4 (W.D.N.Y. Mar. 29, 2021).

An ALJ cannot, of course, arbitrarily substitute his own lay opinion for competent medical opinion evidence. *See, e.g., Riccobono v. Saul*, 796 F. App'x 49, 50 (2d Cir. 2020) ("[T]he ALJ cannot arbitrarily substitute h[er] own judgment for competent medical opinion." *McBrayer v. Secretary of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983)."). However, as just mentioned, an ALJ is entitled to make an RFC finding that is consistent with the record as a whole, even if it does not perfectly match a particular medical opinion. *See, Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (Rejecting argument that ALJ had improperly substituted his medical judgment for expert opinion, stating that: "Although the ALJ's conclusion may not perfectly correspond with any of the

13

opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."); see also, Camille v. Colvin, 652 F. App'x 25, 29 n. 5 (2d Cir. 2016) ("The ALJ used Dr. Kamin's opinion as the basis for the RFC but incorporated additional limitations based on, inter alia, the testimony of Camille that she credited. An ALJ may accept parts of a doctor's opinion and reject others.") (citations omitted).

In this case, the ALJ did not run afoul of these rules by crafting an RFC based only "on his own judgment," contrary to what Plaintiff maintains.  Rather, the ALJ based the RFC finding on his discussion of the entire record (which, incidentally, did not include any medical opinion that Plaintiff had disabling limitations), including the office note from Plaintiff's treating podiatrist, Dr. Perelstein ("Perelstein"), who, on July 27, 2018, reported that Plaintiff had essentially recovered from her bunion surgery, except for some lingering nerve-related pain.  More specifically, Perelstein reported that Plaintiff did *not* have foot pain when standing, but that she felt shooting pain in her foot near the metatarsophangeal joint "when she gets off her foot." Tr. 444.  Perelstein further indicated that Plaintiff had full strength in her feet, normal neurologic findings, "no pain" in the right big toe and normal range of movement. The ALJ further noted that Plaintiff appeared to be exaggerating her foot symptoms, since she testified at the hearing that stiffness in her right big toe caused her to lose her balance and fall, while the medical record contains no mention of Plaintiff ever falling due to toe stiffness. Nevertheless, the ALJ indicated that to the extent Plaintiff claimed to have difficulty walking and standing, he accounted for it by limiting her to sedentary work with additional postural restrictions. Tr. 18.  The ALJ

14

similarly explained the basis for the mental aspects of the RFC finding. Tr. 18-20. In sum, the ALJ made an RFC determination that did not perfectly correspond to any one medical opinion but which was nevertheless supported by substantial evidence. Consequently, this aspect of Plaintiff's motion also lacks merit.

## CONCLUSION

For the reasons discussed above, Plaintiff's motion (ECF No.15) for judgment on the pleadings is denied and Defendant's cross-motion (ECF No. 19) for the same relief is granted. The Clerk of the Court is directed to enter judgment for Defendant and close this action.

So Ordered.

Dated: Rochester, New York
       September 13, 2021

                                    ENTER:

                                    *Charles J. Siragusa*
                                    CHARLES J. SIRAGUSA
                                    United States District Judge